FRANK E. ROGERS *vs.* ALPHA R. HILL.

PROVIDENCE—MARCH 20, 1901.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1)  *Deceit.  Nonsuit.  Authority of Attorney-General to nol. pros.*

In an action of deceit the testimony of plaintiff tended to show that he paid money to the defendant on the latter's representation that he had obtained a settlement of certain cases from the attorney-general and that the sum was necessary to pay fines and costs.  The representations were false.  At the trial the plaintiff was nonsuited on the ground that the money was paid for an unlawful purpose and could not be recovered back : —

*Held*, that the nonsuit was erroneous.  The attorney-general has the power, under article VII, section 12 of the constitution, to enter a *nolle prosequi* in criminal cases upon his official responsibility and without the advice or permission of the court.

Distinguishing *State* v. *Conway*, 20 R. I. 270.

TRESPASS ON THE CASE for deceit.   The facts are stated in the opinion.   Heard on petition of plaintiff for new trial, and petition granted.

ROGERS, J.   This is a petition for a new trial of an action of deceit wherein, upon a trial before a jury in the Common Pleas Division, the plaintiff was nonsuited.   The deceit alleged was obtaining money upon false pretences for the purpose of settling some liquor and nuisance cases against one Mary Gavitt, in whom the plaintiff was sufficiently interested to pay money for her assistance.   The testimony presented by the plaintiff at the jury trial tended to show that when the plaintiff went to the office of F. P. Owen, Esq., an attorney-at-law, to engage him as counsel to get bail, defend

the case, and generally to look out for said Gavitt's interests in the matters, he found the defendant there, who represented himself as connected with Mr. Owen and thus obtained the plaintiff's confidence, subsequently obtaining money at several times for alleged purposes of defence of said cases, and finally procuring $322.00 from him at one time on the ground that a settlement of the cases had been obtained from the attorney-general and that said sum was necessary to pay fines and costs, as appeared by a memorandum, the figures on which it was represented had been obtained from the attorney-general; all of which it was testified was false and fraudulent and deceived the plaintiff into paying the money, when, in fact, no settlement at all had been obtained from the attorney-general, who knew nothing and did nothing in the premises. The record disclosed no evidence tending to show that the money paid by the plaintiff was to be used or attempted to be used unlawfully or corruptly in influencing the attorney-general to settle the cases.

The justice presiding at the jury trial nonsuited the plaintiff, on the ground that the money paid by the plaintiff was for an unlawful purpose, and hence could not be recovered back, citing State v. Conway, 20 R. I. 270, as authority.

(1)   In our opinion the nonsuit was erroneous. No unlawful purpose on the part of the plaintiff in paying the money to the defendant was disclosed by the evidence, unless, indeed, it was unlawful for the attorney-general to settle criminal cases at all, and we cannot presume the existence of an unlawful purpose that the evidence fails to disclose.

There being no express provision of the statutes relating to the power of the attorney-general to enter a nolle prosequi in criminal cases, the power exists in him by virtue of the constitution of the State, article VII, section 12, which provides that the duties and powers of the attorney-general shall be the same under the constitution as are now established, or as from time to time may be prescribed by law. At common law the attorney-general alone possessed this power, and might, under such precautions as he felt it his duty to adopt, discontinue a criminal prosecution in that form at any time

before verdict.    The power and practice under it are laid down in 1 Chit. Cr. Law, 478.    See also *The People* v. *McLeod*, 1 Hill, 377, 405.

Shaw, C. J., in *Commonwealth* v. *Tuck*, 20 Pick. 356, 365, says : ''There are three periods of the prosecution in which a *nolle prosequi* may be entered—before a jury is empanelled, while the case is before the jury, and after verdict.    In the first it is perfectly clear that a *nolle prosequi* may be entered at the pleasure of the prosecuting officer.    Such is the constant practice.    It may be that the indictment is defective and he may wish to procure another.    He may discover that the evidence will turn out differently from what he expected, and he may wish to vary the charge to make it conform to the proof; or he may have good reason for not wishing to prosecute at all.    There may be innumerable causes for discontinuing the prosecution, of all of which he must judge upon his official responsibility.    In many cases the discontinuance may operate to the prejudice of the defendant, but never to the injury of his legal rights.    It is not to be presumed that this officer will violate his duty or act oppressively.''

The practice of entering a *nolle prosequi* to informations is very ancient ; but to indictments it began in the latter end of the reign of Charles II.    *Commonwealth* v. *Wheeler*, 2 Mass. 172.

In the last-named case Parsons, C. J., said : ''I observe in the bar the *nolle prosequi* is alleged to have been entered by the advice of the Court of Common Pleas.    Certainly the court are not legally competent to give any advice on this subject.    The power of entering a *nolle prosequi* is to be exercised at the discretion of the attorney who prosecutes for the government, and for its exercise he alone is responsible.''

In *Commonwealth* v. *Andrews*, 2 Mass. 409, 414, to the attorney-general's remark that if he should be satisfied that a *nolle prosequi* ought to be entered he would ask the countenance of the court for that purpose, the court replied : ''The court never do this but at the instance of the counsel for the government.''

In this State the attorney-general has exercised the power of entering a *nolle prosequi* in criminal cases long anterior to the adoption of the constitution ; and before the trial actually begins, and after the trial concludes and before sentence is imposed, he exercises that power wholly upon his official responsibility, without the advice or permission of the court.

*State* v. *Conway, supra,* affords no light, in our opinion, for guidance in this case.    There, no question arose as to the power of the attorney-general to enter a *nolle prosequi,* the only contention so far as he was concerned being whether he, without the aid of the court, could substitute anything that would be the legal equivalent of a sentence duly imposed by the court.    The statute provides (Gen. Laws R. I. cap. 244, § 40) that no person shall be deemed an incompetent witness because of his conviction of any crime or sentence to imprisonment therefor ; but shall be admitted to testify like any other witness, except that conviction or sentence for any crime or misdemeanor may be shown to affect his credibility. In *State* v. *Conway,* upon the trial of an indictment before a jury, the State had been allowed to show, against the defendant's objection, by way of affecting defendant's credibility, that she had pleaded *nolo contendere* to a previous nuisance indictment against her, and had afterwards paid, by some arrangement with the attorney-general, into the treasury of the State, $100.00 and costs, whereupon a *nolle prosequi* had been entered.    Upon a·petition for a new trial for that alleged error, the attorney-general contended that the plea of *nolo contendere,* together with the payment of $100.00 and costs, was equivalent or tantamount to a conviction or sentence, or both, or in some other manner legally affected the defendant's credibility as a witness so that the admission of the evidence was proper.    The court decided against the contention of the attorney-general ; and while no question of the power of the attorney-general to settle criminal cases was made, the court strongly deprecated the practice of imposing as a condition of settlement anything that would appear as, or that easily could be misconstrued into, a sentence, or as the equivalent or tantamount thereto, the

attorney-general himself even, as shown by his contention, having been misled into the idea that he could, without the aid of the court, by consent of the defendant or otherwise, authorize a sentence or some legal substitute therefor.

Petition for new trial granted.

*Irving Champlin,* for plaintiff.

*Franklin P. Owen,* for defendant.

