BOWNES, Circuit Judge.
 

 Defendants-appellants Attorney Norberto Medina-Zurinaga and his client, the Royal Bank of Canada (Bank), have appealed from their convictions of criminal contempt for having violated the automatic stay provisions of Bankruptcy Rule 601.
 
 [1]
 
 Bank
 
 *568
 
 ruptcy Judge W. H. Beckerleg conducted a show cause hearing at which time he apprised the appellants that the hearing was on the question of civil contempt. However, in certifying the matter to the district court, pursuant to Bankruptcy Rule 920(a)(4),
 
 [2]
 
 the bankruptcy judge altered the nature of the proceeding, stating:
 

 Furthermore, during the proceedings we expressed the opinion, in reply to the question, that this appeared to be a case of civil contempt; after hearing and considering the evidence and the law, our initial opinion has changed. We will therefore certify the facts to the Chief Judge of this court.
 

 Since the parties considered the only issue to be one of law, no evidence was presented to the district court and the case was submitted on .memoranda. The district court held that both appellants had committed criminal contempt violating section 41(a)(1) of the Bankruptcy Act, 11 U.S.C. § 69(a)(1),
 
 [3]
 
 and ordered Attorney Medina-Zurinaga to pay the United States $200 and the Bank to pay the United States $100.
 

 Appellants raise three issues on appeal: first, that they were not afforded adequate notice that they were cited for criminal contempt; second, that they did not violate Bankruptcy Rule 601 or any order, process, or writ of the court; and third, that they acted in good faith, without intent to violate a court order and in reliance on Bankruptcy Judge Asa S. Herzog’s opinion,
 
 Ban-co Central y Economías
 
 v.
 
 Lopez Nevarez (In re Turabo Center Corporation),
 
 No. B-77-27 (Feb. 14, 1978). Since we find that the proper parties were not before the district court and, therefore, there was no prosecution for criminal contempt, we conclude that the district court lacked jurisdiction and we reverse. We, therefore, do not reach the merits of the case.
 

 The procedural history of this case is unique, requiring a quick sketch of the facts, which are not in dispute. On May 25, 1977, Lahm Industries and India House, Inc., executed factor’s lien contracts with the Bank. On May 4, 1978, the Bank initiated foreclosure proceedings against Lahm and India House in the superior court of Puerto Rico. Two days later, Lahm and India House filed petitions for voluntary bankruptcy under Chapter XI of the Bankruptcy Act and the Bank was sent the appropriate notices to stay further proceedings on the foreclosure. The Bank had taken possession of some of the secured properties, but duly returned them to the debtors. On July 7, 1978, Lahm and India House were adjudicated voluntary bankrupts at a meeting of creditors. Appellant Medina-Zurinaga attended the meeting on behalf of the Bank.
 

 Following the meeting of creditors, Medina-Zurinaga consulted with other members of his law firm, and determined that the Bank was now in a position to reinstitute the state court foreclosure proceedings.
 
 [4]
 
 He, therefore, appeared before the superior court, disclosed the fact that the proceedings had been stayed due to the pendency of the Chapter XI petitions, and explained
 
 *569
 
 that there had been a conversion to straight bankruptcy, and moved that a court marshal be ordered to enter the premises of Lahm and India House and attach the secured property. The superior court granted the motion and on July 10, 1978, the marshal removed some of the property and entrusted it to a court appointed custodian.
 

 Unbeknownst to the appellants, the trustee and Bankruptcy Judge Antonio Hernandez had made inventory checks at Lahm and India House on July 8 and 9. The trustee, however, failed to post notices of bankruptcy in either store.
 

 The trustee returned to Lahm and India House on July 12, 1978, and discovered that someone had entered and removed some merchandise. The trustee contacted Judge Hernandez, who in turn called the superior court. The superior court, in deference to the bankruptcy court, vacated the order of attachment and ordered the custodian to return the attached property to the trustee.
 

 Of his own volition, Bankruptcy Judge Hernandez issued an order to show cause why appellants “should not be held in contempt of this Court” for their unauthorized forcible entrance of Lahm and India House. Under Bankruptcy Rule 920(a)(2),
 
 [5]
 
 the bankruptcy judge is entitled to issue such an order on his own initiative. However, one of the requirements of the rule, that the notice state “whether the contempt is criminal or civil or both,” was not met.
 
 [6]
 

 As the government concedes in the opening lines of its brief, this contempt proceeding was never prosecuted by the government at any stage prior to this appeal.
 
 [7]
 
 At the hearing before Bankruptcy Judge Beck-erleg, the posture of the case was that the trustee, represented by counsel, was bringing a civil contempt action against appellants. As the colloquy among the parties and the judge reveals,
 
 [8]
 
 counsel for the trustee was not authorized to represent the judiciary and he did not purport to do so.
 

 When the matter was certified to the district court, the district court issued an order to show cause why ' appellants should not be in “criminal contempt.” Despite this shift in the nature of the case, no prosecutor was brought in, no fresh evidence was adduced, and the parties submitted their views by supplementary briefing. Although the trustee had standing to litigate the civil contempt at the bankruptcy hearing, he did not, as a private party, have standing to prosecute the criminal
 
 *570
 
 contempt proceeding before the district court.
 
 Ramos Colon v. United States Attorney General,
 
 576 F.2d 1, 5 (1st Cir. 1978). The district court should have dismissed the criminal contempt case for, without the proper parties, there was no criminal prosecution and the court lacked jurisdiction.
 
 Cf. Simon
 
 v.
 
 Eastern Kentucky Welfare Rights Organization,
 
 426 U.S. 26, 37-38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (where the parties lack standing, the court is without jurisdiction). Even though this jurisdictional defect was not recognized below nor argued on appeal, we have the constitutional obligation and corresponding authority to make this determination at the appellate level.
 
 Mansfield Coldwater & Lake Michigan Railway v. Swan,
 
 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Because we find that the district court lacked jurisdiction, we reverse appellants’ conviction for criminal contempt. It is too late in the day for the government to come in and attempt to salvage a conviction which had no jurisdictional basis.
 

 SO ORDERED.
 

 [1]
 

 . Bankruptcy Rule 601 provides in pertinent part:
 

 PETITION AS AUTOMATIC STAY AGAINST LIEN ENFORCEMENT
 

 (a)
 
 Stay Against Lien Enforcement.
 
 The filing of a petition shall operate as a stay of any act or the commencement or continuation of any court proceeding to enforce (1) a
 
 *568
 
 lien against property in the custody of the bankruptcy court, or (2) a lien against the property of the bankrupt obtained within 4 months before bankruptcy by attachment, judgment, levy, or other legal or equitable process or proceedings.
 

 (b)
 
 Duration of Stay.
 
 Except as it may be terminated, annulled, or modified by the bankruptcy court under subdivision (c), (d), or (e) of this rule, the stay shall continue until the bankruptcy case is dismissed or closed, or until the property subject to the lien is, with the approval of the court, set apart as exempt, abandoned, or transferred.
 

 [2]
 

 .(4)
 
 Certification to District Judge.
 
 If it appears to a referee that conduct prohibited by § 41a of the Act may warrant punishment by imprisonment or by a fine of more than $250, he may certify the facts to the district judge. On such certification the judge shall proceed as for a contempt not committed in his presence.
 

 [3]
 

 . 11 U.S.C. § 69(a)(1) provides: “(a) A person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ[.]”
 

 [4]
 

 . Both parties devote a substantial portion of their briefs to the intricacies of Bankruptcy Rule 601. However, the correctness of the appellants’ reading and application of
 
 In re Tura-bo Center Corporation,
 
 No. B-77-27 (Feb. 14, 1978), and Rule 601 are not directly before us and so we decline comment upon this issue.
 

 [5]
 

 . Bankruptcy Rule 920(a)(2) provides in pertinent part: “The notice may be given on the referee’s own initiative or on motion by a party, by the United States attorney, or by an attorney appointed by the referee for that purpose.”
 

 [6]
 

 . This omission may or may not have been fatal. See
 
 United States v. United Mine Workers,
 
 330 U.S. 258, 295-301, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (criminal contempt conviction upheld despite absence from notice of the nature of the contempt since contemnors were well aware of the charges and did not show substantial prejudice from the error). We need not reach this issue in light of our decision to reverse on other grounds.
 

 [7]
 

 . “The United States was not a party to the proceedings either before the Bankruptcy Court or before the District Court. No prose-cutorial rule whatsoever was played by the United States at any time.”
 

 [8]
 

 . MR. PICO: ... I understand, by the way, that Mr. Herrero is acting by appointment of the Court as a prosecuting attorney.
 

 MR. HERRERO: Your Honor, I just spoke to Judge Hernandez. He tells me that I am acting on behalf of the Trustee and presenting evidence on behalf of the Trustee because of the fact that the Trustee had already taken possession of the property.
 

 THE COURT: That is my understanding, that you are the attorney for the Trustee.
 

 MR. PICO: Well, I don’t know, Your Honor, that a Trustee has any standing in a criminal proceeding for contempt before this Court.
 

 THE COURT: Excuse me, I don’t believe this is a criminal contempt.
 

 MR. HERRERO: It’s a civil contempt.
 

 THE COURT: If it is, I am in the wrong place, because I don’t have any criminal jurisdiction.
 

 MR. PICO: Then I gather Your Honor understands a civil contempt.
 

 THE COURT: That is what I understand. That doesn’t mean that you cannot be fined, but I can’t put you in jail.
 

 MR. PICO: Because in a civil contempt, Your Honor, we understand that there has to be a complaint by the agrieved [sic ] party and here there is no complaint filed by anybody. It’s just an order of the Court to show cause.
 

 It’s a very peculiar situation that we are in.