Diane S. CRONAN ex rel. STATE

v.

John J. CRONAN.[1]

No. 99–378–C.A.

Supreme Court of Rhode Island.

June 28, 2001.

---

1. Because the complainant in a private misdemeanor prosecution stands in a qualitatively different relationship to the defendant than in a civil action, we amend the caption of this matter to reflect the criminal nature of this case and to clarify the relationship of the parties before us. *See* Article I, Rule 10(e) of the Supreme Court *Rules* of Appellate Procedure, ("[T]he Supreme Court, on proper suggestion or of its own initiative, may direct that omission * * * be corrected * * *.").

John P. Larochelle, Providence, Sheldon Whitehouse, Attorney General, Joshua S. Macktaz, Eugene G. Bernardo, II, Providence, Paul Cassell, Lauren Sandler Zurier, Providence, for Plaintiff.

John A MacFadyen III, Providence, Lise J. Gescheidt, for Defendant.

Present LEDERBERG, BOURCIER, FLANDERS, WEISBERGER (ret.), and SHEA (ret.), JJ.

## OPINION

FLANDERS, Justice.

This appeal challenges the Superior Court's jurisdiction to hear and determine the private prosecution of a criminal com-

plaint. It also attacks the propriety of the defendant's misdemeanor conviction for simple assault on a number of other grounds. As a result of his conviction, the defendant, John J. Cronan, M.D., received a one-year suspended sentence and one year of probation. The victim, complainant, and prosecutrix (via privately employed counsel) was the defendant's estranged wife, Diane S. Cronan (Mrs. Cronan). During the prosecution of this criminal complaint, the Cronans were engaged in a bitterly contested divorce, though the final decree had not yet entered when the Superior Court found the defendant guilty of assaulting Mrs. Cronan. For the reasons stated below, we affirm the judgment of conviction.

### Facts and Travel

On September 27, 1996, during an argument in their Barrington home, Mrs. Cronan claimed that defendant yanked her by the arm, shoved her, and kicked her. She swore out and filed a private criminal complaint against him in District Court on October 22, 1996, accusing him of assault. After arraigning defendant, the court transferred the case on January 30, 1997, to Superior Court in accordance with Rule 23 of the District Court Rules of Criminal Procedure.[2] Thereafter, in Superior Court, defendant waived his right to a jury trial. When the case was reached for trial, a state prosecutor from the Attorney General's office, who was present in court,

declined to prosecute the case upon learning that Mrs. Cronan was prepared to proceed with her own private attorneys serving as the prosecutors for her complaint. Thereafter, without any objection from defendant, Mrs. Cronan's privately employed counsel prosecuted the assault charge against defendant, and the trial justice ultimately found him guilty as charged.

During the trial, Mrs. Cronan testified to the following facts. The Cronans had been married for twenty-four years. During their marriage, they had two children: John, who was then fifteen-years old, and Candace, who was then thirteen-years old. On the evening of September 27, 1996, Mrs. Cronan was in bed reading at about 10 p.m. when her husband walked into the bedroom, lifted the comforter to get into bed, and deliberately knocked all of her reading material onto the floor. When Mrs. Cronan bent over to pick up the material, defendant kicked her, pulled her hair, and called her a "crazy bitch." Mrs. Cronan attempted to flee, but he followed her through the house, tripping her and kicking her along the way to the garage. She tried to dial 911, but defendant ripped the telephone out of her hands and, indeed, he "almost ripped [it] out of the wall." Once she was in the garage, she got into her car and tried to lock the doors, but she was not quick enough to elude defendant,

**2.** Rule 23 of the District Court Rules of Criminal Procedure requires the District Court to inform a defendant who has been charged with an offense punishable by imprisonment of a term of more than six months that a failure to file a written waiver of the defendant's right to a jury trial in the first instance within ten days of the arraignment shall result in a transfer of the proceeding to Superior Court for a trial there. The defendant asserts that in the District Court his trial attorney withdrew his previously filed waiver of his right to a jury trial and that he did so outside his presence and without his permission or knowledge. The record, however, is inadequate to determine what defendant knew, allowed, or agreed to in connection with the removal of this case from the District Court to Superior Court, except to indicate that his attorney deliberately accomplished this removal and that defendant and his attorney allowed the Superior Court trial to proceed to a verdict there without raising any objection to the procedure that removed the case to the Superior Court in this manner.

who jumped into the car after her. He then grabbed the keys from her. When she got out of the car, he grabbed her by the hair and pulled her across the garage floor.

The next morning Mrs. Cronan called her mother, to whom she had not spoken in years, and asked her to come over to her house. About a week later, on October 4, 1996, the Barrington police came to the home with a constable and an ex parte eviction notice. When the police observed the bruises on Mrs. Cronan's body, they advised her to fill out a complaint at the station. But the police never arrested defendant for the assault. Other witnesses corroborated various aspects of Mrs. Cronan's testimony.

The defendant testified that on September 21, 1996, his wife was in a rear-end automobile accident, resulting in soft tissue bruising. He explained that his wife had been behaving in a bizarre way, threatening him and the children with violence. He said that he told Mrs. Cronan that unless she continued with her psychiatric care, he and the children would move out of the house. He admitted to swatting Mrs. Cronan with a pillow once in 1996, but he denied the assault allegations that led to this trial. Other witnesses also testified and corroborated various aspects of defendant's testimony.

At the conclusion of the trial, the trial justice rendered a bench decision in which he evaluated all the testimony and found defendant guilty. On the same date, he sentenced defendant. Thereafter, on March 1, 1999, the trial justice heard and denied defendant's motions for arrest of judgment and for a new trial. The defendant challenges these rulings on appeal.

## Analysis

*On appeal from his conviction in Superior Court, defendant argues various issues* that we organize under three separate headings. First, defendant challenges the legality of a private misdemeanor prosecution in Superior Court. He insists that the Superior Court lacked jurisdiction over the case because the Attorney General deferred to the complainant's private attorneys and allowed them to prosecute the assault charge to judgment. In the alternative, defendant asks this Court to exercise its supervisory powers and to prohibit private misdemeanor prosecutions like this one. Second, defendant asserts numerous constitutional, procedural, and evidentiary defects concerning this private prosecution: namely, (1) that it violated defendant's constitutional rights to due process, equal protection, and separation of powers; (2) that the withdrawal of defendant's waiver of a jury trial in the District Court occurred without his knowledge or consent; (3) that the prosecution failed to comply with the discovery requirements of Rule 16 of the Superior Court Rules of Criminal Procedure; and (4) that the trial justice erred in admitting certain "propensity evidence" during trial, in violation of Rule 404(b) of the Rhode Island Rules of Evidence. Third, defendant suggests that the prosecution failed to provide him with exculpatory evidence, as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. We address below each of these arguments (including whether they have been preserved for appeal).

## I

### Private Misdemeanor Prosecutions

The first question on appeal concerns the legality of a private person like Mrs. Cronan initiating and prosecuting a criminal misdemeanor complaint to judgment in Superior Court. More specifically, defendant asserts that Rhode Island does not authorize private prosecutions like this one

and that, as a result, the Superior Court lacked jurisdiction over this criminal proceeding. The complainant counters that state statutes and the decisions of this Court authorize private misdemeanor prosecutions.

In denying defendant's post-trial motion for arrest of judgment, the Superior Court relied upon G.L.1956 § 12–10–12 as authority for allowing Mrs. Cronan to proceed via a private complaint and private prosecutors. Section 12–10–12, is entitled "Filing of complaints," provides in pertinent part that:

> "Subject to any other provisions of law relative to the filing of complaints for particular crimes, any judge of the district court or superior court may place on file any complaint in a criminal case *other than* a complaint for the commission of a felony or a complaint against a person who has been convicted of a felony *or a private complaint.* * * * If no action is taken on the complaint for a period of one year following the filing, the complaint shall be automatically quashed and destroyed." (Emphasis added.)

The trial justice ruled:

> "So, I do not see that this Court is without jurisdiction. As I said, our legislature in [§ ] 12–10–12 makes reference to the filing of criminal complaints, and *State v. Peabody,* I know it is fashionable at times to say, well, if a case is old, it must not have any life left to it, but *State v. Peabody,* has not been overruled, and I think it contains an accurate

and succinct declaration of the common law practice of having these complaints allowed at the level of misdemeanors."

■ The trial justice correctly construed both § 12–10–12 and *State v. Peabody,* 25 R.I. 178, 55 A. 323 (1903), as supportive of the conclusion that private misdemeanor prosecutions are valid in this jurisdiction. In *Peabody,* a private individual filed a criminal complaint and successfully obtained a conviction against the defendant for nonsupport of his children. *Id.* at 179, 55 A. at 323. While the defendant's petition for a new trial was pending, the complainant died. *Id.* The issue on appeal was whether the complainant's death served to abate the proceeding. *Id.* The Court in *Peabody* ruled that the complainant's death had no effect on the case since "the State is the real prosecutor." *Id.* at 180, 55 A. at 323. The Court further reasoned that, "the mere fact that a private individual is the complainant does not have the effect to render the case any the less a State case than though it were brought by a chief of police or any other prosecuting officer." *Id.* *Peabody,* therefore, as well as the Court's previous decision in *State v. Woodmansee,* 19 R.I. 651, 35 A. 961 (1896), supports the conclusion that private misdemeanor prosecutions, initiated by complaints filed by a private citizen, long have been a part of Rhode Island criminal law.[3]

■ In addition to § 12–10–12, other legislative enactments directly authorize prosecutions by private complaint. Thus,

---

**3.** In fact, prosecutions based upon complaints filed by private individuals have a pedigree that stretches back into early English law; indeed, they have been described as a principal feature of English criminal law. *See* 4 William Blackstone, *Commentaries on the Laws of England* 5–7, 304–05, 308–12 (1769). At the time of our nation's founding, "private persons regularly prosecuted criminal cases."

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 127–28, 118 S.Ct. 1003, 1029, 140 L.Ed.2d 210, 249 (1998) (Stevens, J., concurring in the judgment). *See also* Alexis de Tocqueville, *Democracy in America* 86 (J.P. Mayer & M. Lerner, eds. 1966) ("[T]he officers of the public prosecutor's office are few, and the initiative in prosecutions is not always theirs.").

G.L.1956 § 12–4–1 expressly authorizes the filing of private complaints "[w]henever * * * any person has * * * threatened to commit any crime or offense against the person or property of another," and § 12–4–2 explains how a "complainant" files and commences the prosecution of a criminal complaint "with condition to prosecute the complaint with effect."[4] Section 12–4–6 provides for reimbursement of court costs to the accused if the District Court considers the complaint to be unsupported by the evidence.[5] Although both the Rhode Island Constitution and the General Laws exclusively confer the power and responsibility to pursue felony indictments and informations upon the Attorney General, G.L.1956 § 12–12–1.3 provides that "[a]n offense which may be punished by imprisonment for a term not exceeding one year or a fine not exceeding one thousand dollars ($1,000) *may be prosecuted by complaint.*" (Emphasis added.) *Compare* R.I. Const. art. I, § 7;[6] G.L.1956 § 12–12–1.2 ("[A]n offense which may be punished by imprisonment for a term exceeding one year and/or by a fine exceeding one thousand dollars ($1,000) may be prosecuted by indictment or information signed by the attorney general or one of the attorney general's designated assistants"), *with* § 12–12–1.3 (authorizing prosecutions by complaint for misdemeanors). We are of the opinion that these statutes and constitutional provisions, construed together and in the context of a long history in this state allowing private misdemeanor prosecutions for offenses that can be charged by complaint, evidence a clear legislative authorization for the filing and prosecution of private misdemeanor complaints such as this one—especially in the absence of any contrary statutes or other legal requirements that would preclude such prosecutions.

■ We also hold that the Superior Court properly possessed subject-matter jurisdiction over this criminal complaint.

4. General Laws 1956 § 12–4–2 states:
 "*Warrant to apprehend accused.*—If the complainant shall then, before the judge or justice of the peace, enter into a recognizance in a sum, not exceeding fifty dollars ($50.00), and with this surety, as the judge or justice of the peace shall direct and approve, *with condition to prosecute the complaint with effect, or in default of prosecution to pay the costs that may accrue to the state,* the judge or justice of the peace shall issue a warrant returnable forthwith, annexing to the warrant the complaint, or reciting its substance therein, directed to the sheriff, deputy sheriffs, town sergeants, and constables in the county in which the division is, and to the like officers in the county in which the accused may be supposed to belong, reside, or be found, and requiring the officer who shall be charged with the service of the warrant forthwith to apprehend the accused and have him or her before the district court for the division in which the offense shall be alleged to have been committed." (Emphasis added.)

5. Furthermore, under § 12–4–6 and G.L.1956 § 12–6–8, a complainant must pay all court costs if the complaint is unsupported by the evidence or the defendant is discharged after trial. The reimbursement provisions of § 12–4–6 and § 12–6–8 stand in stark contrast to the prosecutorial immunity enjoyed by the Attorney General.

6. Article 1, section 7, of the Rhode Island constitution provides, in pertinent part:
 "Except in cases of impeachment, or in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger, *no person shall be held to answer for any offense which is punishable by death or by imprisonment for life unless on presentment or indictment by a grand jury, and no person shall be held to answer for any other felony unless on presentment or indictment by a grand jury or on information in writing signed by the attorney-general or one of the attorney-general's designated assistants,* as the general assembly may provide and in accordance with procedures enacted by the general assembly." (Emphasis added.)

The defendant relies upon *In re Lahm Industries, Inc.*, 609 F.2d 567 (1st Cir. 1979) to support his assertion that Mrs. Cronan lacked "standing" to prosecute this case and, therefore, that the Superior Court lacked jurisdiction over the proceeding.[7] His argument stems from a line of federal cases that condition a federal court's jurisdiction to try a criminal case upon its presentation by a properly appointed prosecutor.[8] *See, e.g., United States v. Durham*, 941 F.2d 886, 892 (9th Cir.1991) (remanding case for factual inquiry because district court would lack jurisdiction to try criminal case if special prosecutor was not properly supervised by the United States Attorney); *United States v. Denton*, 307 F.2d 336, 338 (6th Cir.1962) (explaining that case brought by special prosecutor lacking authority to prosecute the matter deprives court of jurisdiction). Those federal precedents, however, generally turn on the inherent limited jurisdiction of the lower federal courts, in contrast to the general jurisdiction of the Superior Court where "the constraints of Article III [of the United States Constitution] do not apply * * *." *ASARCO v. Kadish*, 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L.Ed.2d 696, 715 (1989).

■ "The Superior Court is a court of *general jurisdiction* and may decide any controversy in which the state alleges the commission of a felonious crime *or, indeed, any crime unless jurisdiction is conferred upon some other tribunal.*" *State v. Souza*, 456 A.2d 775, 779 (R.I.1983) (emphasis added); *see also* G.L.1956 § 8-2-15 ("The superior court shall have original jurisdiction of all crimes, offenses, and misdemeanors, except as otherwise provided by law."). In contrast, the federal district courts are courts of limited jurisdiction, and their criminal jurisdiction has been restricted exclusively to crimes specifically defined by Congress. *See United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. ——, ——, 121 S.Ct. 1711, 1717, 149 L.Ed.2d 722 (2001); *United States v. Hudson and Goodwin*, 11 U.S. (7 Cranch) 32, 32–33, 3 L.Ed. 259, 260 (1812); *see also* U.S. Const. Art. III, § 1. Congress has granted federal district courts "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States," 18 U.S.C. § 3231, as defined by statute, and has provided that "each United States attorney, within his district, shall * * * prosecute for all offenses against the United States." 28

---

7. Significantly, this Court's decisions in *State v. Peabody*, 25 R.I. 178, 55 A. 323 (1903), and *State v. Woodmansee*, 19 R.I. 651, 35 A. 961 (1896), contradict this argument. As the Court stated in *Peabody*, in a private prosecution, "the State is the real prosecutor." 25 R.I. at 180, 55 A. at 323. By standing in the shoes of the state and conducting the private prosecution according to law, a private complainant satisfies all the traditional elements of "standing" to create a justiciable controversy and avoid the rendering of an advisory opinion. *See generally Berberian v. Travisono*, 114 R.I. 269, 274, 332 A.2d 121, 124 (1975) (explaining that an actual justiciable controversy is basic to the court's jurisdiction); *Lamb v. Perry*, 101 R.I. 538, 542, 225 A.2d 521, 523 (1967).

8. An exception to this general federal rule allows a federal district court itself to initiate criminal contempt proceedings and appoint a private attorney to prosecute the matter. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793, 107 S.Ct. 2124, 2130, 95 L.Ed.2d 740, 749 (1987). This exception arises from the inherent authority of federal trial courts to ensure obedience to their orders. *See id.* Although *Young* upheld the inherent authority of a federal district court to appoint a private prosecutor in a court-initiated criminal contempt action, the United States Supreme Court exercised its supervisory power and prohibited the appointment of counsel for an interested party in the underlying civil litigation as the prosecutor for the contempt action. *Id.* at 802, 107 S.Ct. at 2135, 95 L.Ed.2d at 755.

U.S.C. § 547. No comparable provision, however, mandates that the office of the Rhode Island Attorney General shall prosecute all offenses against the State of Rhode Island. Indeed, as the Attorney General concedes, municipal solicitors, law enforcement authorities, and other individuals not affiliated with the Attorney General commonly prosecute or assist in prosecuting misdemeanors and other offenses in District Court and municipal courts throughout the state.

■ The defendant suggests that the Superior Court, as a court of general jurisdiction, nevertheless lacked the authority and competence to hear and decide the charge in this case because a private complainant—rather than one affiliated with or authorized by the Attorney General—initiated and prosecuted this charge to judgment. We disagree and hold that the Superior Court possessed the jurisdiction to decide whether the defendant was guilty of the assault charge, even though no attorney from the Attorney General's office prosecuted this case to judgment. Although an attorney from the Attorney General's office deferred to the complainant's private prosecutors when this case was reached for trial in Superior Court, this event did not cause the court's jurisdiction to lapse.[9] *Cf. Souza,* 456 A.2d at 779 ("Absence of subject matter jurisdiction in the fundamental sense is an extreme determination when applied to a trial court of general jurisdiction.") (citing *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). Neither the General Assembly nor the Rhode Island Constitution has conditioned the Superior Court's subject-matter jurisdiction in misdemeanor cases such as this one upon the Attorney General's prosecution of the case. And because defendant raised no issue concerning the sufficiency of the complaint, it fell within the competence and authority of Rhode Island's court of general jurisdiction to hear and determine the charge against defendant. Thus, we hold that the Superior Court possessed subject-matter jurisdiction in this case.

■ Significantly, this was not a case where the Attorney General, or one or more of that office's representatives, advised the Court and the private complainant that, in the Attorney General's opinion, the charge should be dismissed or that the Attorney General's office wished to assume responsibility for prosecuting the case to judgment. In other contexts we have stressed the unique position of the Attorney General in Rhode Island's constitutional system. Indeed, the essential powers of that office require it to be able to exercise its discretion and judgment concerning the prosecution of criminal charges, even in misdemeanor cases like this one. *See, e.g., In re House of Representatives (Special Prosecutor),* 575 A.2d 176, 179–80 (R.I.1990); *Suitor v. Nugent,* 98 R.I. 56, 58–59, 199 A.2d 722, 723 (1964); *State v. Fay,* 65 R.I. 304, 310–11, 14 A.2d 799, 801–02 (1940); *Orabona v. Linscott,* 49 R.I. 443, 445, 144 A. 52, 53 (1928); *Rogers v. Hill,* 22 R.I. 496, 497, 48 A. 670, 670–71 (1901). These cases explicitly affirm the proposition that the office of Attorney General possesses the exclusive

---

**9.** The Attorney General, as an *amicus curiae* to the defendant's appeal, urges us to conclude that the Superior Court lacked jurisdiction to hear this case because no prosecutor from the Attorney General's office or other *authorized attorney prosecuted this case to judgment.* Respectfully, we disagree. The mere failure of the Attorney General (or one of the attorneys employed in that office) to initiate or prosecute this complaint did not deprive the Superior Court of jurisdiction to hear and determine the misdemeanor charge against defendant because its jurisdiction to do so did not depend upon the Attorney General's involvement in the prosecution of this charge.

power to dismiss criminal charges by entering a *nolle prosequi*,[10] and that its power to do so derives from article 9, section 1 of the Rhode Island Constitution. *See Suitor*, 98 R.I. at 59, 199 A.2d at 723; *Orabona*, 49 R.I. at 445, 144 A. at 53; *Ex parte McGrane*, 47 R.I. 106, 107, 130 A. 804, 804 (1925); *Rogers*, 22 R.I. at 497, 48 A. at 670–71. Thus, the Attorney General may file a *nolle prosequi* and thereby cause a criminal case, including one initiated via a private complaint, to be dismissed at any time before the imposition of sentence. *See Orabona*, 49 R.I. at 445, 144 A. at 53; *Rogers*, 22 R.I. at 497, 48 A. at 670–71.

■ As we explained above, however, this private prosecution proceeded to trial and judgment only after an attorney employed by the Attorney General's office, who was present in court when the case was called for trial, declined to prosecute the case. At any time before the imposition of sentence, the office of Attorney General, by and through any one of its assistant attorneys, could have intervened and filed a Rule 48(a) dismissal notice without the advice or permission of the court. *See Rogers*, 22 R.I. at 497, 48 A. at 670–71 (discussing the Attorney General's inherent constitutional authority to enter a *nolle prosequi* at any time before verdict). By declining to do so, however, and by failing to undertake to prosecute or to dismiss this case, the Attorney General, through one or more of its duly authorized representatives,[11] has waived any ability on appeal to challenge the propriety of this prosecution.

■ The defendant also urges us to exercise our supervisory authority over the Superior Court and declare "that employ-

10. *"Nolle prosequi* is a formal entry on the record by the prosecuting officer by which he declares that he will not prosecute the case further, either as to some counts of the indictment, or as to part of a divisible count, or as to some of the persons accused, or altogether. It is a judicial determination in favor of accused and against his conviction, but it is not an acquittal, nor is it equivalent to a pardon." 22A C.J.S. *Criminal Law* § 419 at 1 (1989). (Emphasis added.) *See also* Super. R.Crim. P. 48(a) (governing dismissal of prosecutions) ("The attorney for the State may file a dismissal of an indictment, information, *or complaint* and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.") (emphasis added); Dist. R.Crim. P. 48(a) ("The attorney for the State may file a dismissal of a complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.").

11. Assistant attorneys general and other attorneys employed by the Attorney General's office who are present in court when a criminal case is called for trial and who expressly advise the court that they either will or will not assume the prosecutorial duties of the case in question have actual authority to do so by reason of their office, and the Attorney General will not be heard to claim otherwise on appeal. *See* G.L.1956 § 42–9–1 ("There shall be a department of the attorney general. The head of the department shall be the attorney general who shall have supervision over the department and shall appoint thirty (30) assistant attorneys general."); § 42–9–2(a) ("The attorney general, the assistant attorneys general, and those special assistant attorneys general who have been designated by the attorney general, shall exercise the powers and duties prescribed in and shall enforce the provisions of this chapter and of §§ 12–1–4—12–1–12, and in all other provisions of the general laws and public laws insofar as they relate to the powers and duties of attorney general."); § 42–9–8 ("The attorney general is hereby empowered to appoint from time to time twelve (12) assistant attorneys general whose powers and duties shall be similar to those imposed upon the attorney general by law and shall be performed under and by the advice and direction of the attorney general, and such special assistant attorneys general as may from time to time be necessary, whose powers and duties shall be as designated pursuant to § 42–9–2.").

ment of interested private prosecutors is error so fundamental that any conviction gained by such a prosecution must be reversed without showing of actual prejudice."[12] The defendant points to *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), in support of his argument. *Young* involved a settlement agreement among parties to a trademark infringement suit in a federal district court action. As part of the settlement agreement, two defendants consented to the entry of a permanent injunction prohibiting them from infringing the trademark of a leather-goods manufacturer. *Id.* at 790–91, 107 S.Ct. at 2128–29, 95 L.Ed.2d at 747–48. When the federal district court subsequently found probable cause to believe that the defendants had violated the injunction, it appointed counsel for the plaintiff, a leather-goods manufacturer, as a special prosecutor in the ensuing criminal contempt proceeding, after which the court convicted the defendants. *Id.* at 791–92, 107 S.Ct. at 2129, 95 L.Ed.2d at 748–49. The defendants' appeal in *Young* challenged the inherent authority of the district court to select the special prosecutor in the criminal contempt proceeding from the ranks of the attorneys for one of the parties in the underlying trademark dispute. In exercising its supervisory power and reversing the convictions, the United States Supreme Court held that, "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." *Id.* at 809, 107 S.Ct. at 2138, 95 L.Ed.2d at 759.

*Young,* however, does not provide defendant with the support that he seeks in this case. As an initial matter, of course, we note that *Young* relied upon the United States Supreme Court's supervisory powers over lower federal courts. Because that decision was not based upon the United ed States Constitution, it does not bind us here. *See State v. Massey,* 119 R.I. 666, 675, 382 A.2d 801, 806 (1978); *State v. Carillo,* 112 R.I. 6, 8–9, 307 A.2d 773, 775 (1973). More substantively, *Young* presented the narrow question of whether a federal trial court possessed the inherent authority to appoint private counsel to prosecute the defendants for criminal contempt of a court-ordered injunction (rather than requiring the court to refer the matter to the federal prosecuting authorities). The Supreme Court answered this question in the affirmative. *Young,* 481 U.S. at 793, 107 S.Ct. at 2130, 95 L.Ed.2d at 749–50. With respect to federal court matters, in contrast to the prosecutorial scheme in this jurisdiction, Congress specifically has provided that "each United States attorney, within his district, shall * * * prosecute for all offenses against the United States," 28 U.S.C. § 547. Nevertheless, the *Young* Court authorized the district court's appointment of a private prosecutor to punish noncompliance with its orders as an essential means to vindicate that court's own authority.

In sum, *Young* only limited the inherent authority of the federal district courts concerning *who* the court could appoint to enforce the orders of the court. Here, unlike *Young,* the complainant was not the beneficiary of a court order whose attorneys were then appointed by that very court to enforce an alleged criminal contempt of the court's order. Moreover, in this case, as we have already explained (and in stark contrast to the federal sys-

---

**12.** General Laws 1956 § 8–1–2 provides in relevant part that this Court "shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided."

tem),[13] the General Assembly has specifically provided for prosecutions based upon a complaint filed by a private individual. As the Legislature empowered her to do, Mrs. Cronan (and not the Superior Court) initiated this misdemeanor prosecution to punish a public wrong, and she then proceeded, as the law allowed her to do, "to prosecute the complaint with effect" by hiring counsel for this purpose (the two attorneys who prosecuted the case in Superior Court did not represent Mrs. Cronan in the concurrent divorce and custody proceedings between the Cronans in Family Court). *See* § 12–4–2. In sum, given the historical and statutory pedigree of private prosecutions in this state, as well as the particular procedural posture of this case, we decline to exercise our supervisory powers to establish a *per se* rule prohibiting private prosecutions like this one. *Cf. State v. Jackson,* 570 A.2d 1115, 1117 (R.I.1990) (explaining that the Court's supervisory power "should be exercised with great restraint after balancing carefully the societal interests involved") (citing *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980)).

▇ Our ruling today does not ignore the possibility that particular private prosecutions might raise legitimate constitutional, discovery, and ethical concerns. And it does not preclude the Attorney General from seeking to assert control over any criminal prosecution, even a misdemeanor charge like this one, that a private complainant has initiated. All we hold is that the Attorney General's failure to do so in this case did not deprive the Superior Court of jurisdiction to hear and determine the charge. Finally, we do not hesitate to confirm what this Court stated

long ago in *Peabody:* that attorneys conducting private prosecutions stand in the shoes of the state, and thereby take upon their shoulders all of the legal, ethical, and professional responsibilities (an example of which we discuss below) of their public prosecutorial counterparts. *Peabody,* 25 R.I. at 180, 55 A. at 323.

## II

## Constitutional, Procedural, and Evidentiary Challenges

The defendant also complains of various constitutional, procedural and evidentiary errors with respect to various rulings of the District and Superior Courts. For the reasons that follow, however, we decline to address the merits of these arguments, because defendant failed to preserve them for our review.

▇ The defendant complains, for example, that this private prosecution violated his due process, separation of powers, and equal protection rights under the Rhode Island and United States Constitutions. Whatever merit these contentions may have in some other case, we hold that defendant waived his right to raise these constitutional challenges to this private prosecution. By failing to raise any of these defenses or challenges to the complaint before trial, defendant could not assert them for the first time in a post-trial motion to arrest the judgment. Rule 34 of the Superior Court Rules of Criminal Procedure provides two independent grounds to arrest a judgment: "[1] if the indictment, information, or complaint does not charge an offense or [2] if the court was without jurisdiction of the offense

---

13. *See* Helen Hershoff, *State Courts and the 'Passive Virtues': Rethinking the Judicial Function,* 114 Harv. L.Rev., 1834, 1841, 1941 (2001) (illustrating how "almost every state deviates in some way from the federal model" and arguing that "state courts, because of their differing institutional and normative positions, should not conform their rules of access to those that have developed under Article III").

charged." Rule 34, however, does not permit a defendant to obtain belated review of any constitutional defenses or challenges that could have and should have been raised earlier. Thus, defendant's untimely assertion of alleged constitutional violations fails under our well-established "raise-or-waive" rule. *See State v. Pineda*, 712 A.2d 858, 861 (R.I.1998); *see also* Super. R.Crim. P. 12(b)(2).[14]

■ To be sure, we previously have recognized an exception to the raise-or-waive rule for issues implicating basic constitutional rights. *See In re David G.*, 741 A.2d 863, 866 (R.I.1999); *State v. Mastracchio*, 672 A.2d 438, 446 (R.I.1996). But to fall within this exception, the defendant must show: (1) that the error complained of amounts to more than harmless error; (2) that a sufficient record exists to permit a determination of the issue; and (3) that "counsel's failure to raise the issue [before trial] must be premised upon a 'novel rule of law that counsel could not reasonably have known during the trial.'" *State v. Donato*, 592 A.2d 140, 142 (R.I.1991) (quoting *State v. Estrada*, 537 A.2d 983, 987 (R.I.1988)). In this case, however, defendant failed to satisfy this third element because the constitutional issues that he argued for the first time in his post-trial arrest-of-judgment motion were far from "novel" and were present in this case from its inception in both the District and Superior Courts. Further, we can fathom no reason why they could not have been raised in a timely pretrial motion, as Rule 12(b)(2) requires. The mere fact that in

Rhode Island private prosecutions have not been squarely challenged previously on constitutional grounds does not render these questions "novel" for purposes of the exception to the raise-or-waive rule. *Cf. In re David G.*, 741 A.2d at 866 (refusing to apply exception to permit post-trial constitutional challenge to sex-offender-registration statute). Therefore, we are unable to pass upon the merits of these untimely constitutional challenges.

■ The defendant next argues that the withdrawal of his jury-trial waiver in the District Court occurred without his consent and deprived him of his right to be tried in the first instance in District Court pursuant to Rule 23. We are unable to address the merits of this contention, however, because it, too, has not been properly preserved for our review. This Court will not review issues when the appellant fails to preserve his or her objection or to provide us with an adequate record of the proceedings below. *See Pineda*, 712 A.2d at 860–61. Here, we have not been provided with any record evidence that defendant ever raised a trial objection to the challenged procedure, much less have we been given any transcripts of the proceedings relating to this contention or other documentation that would substantiate defendant's position on this issue. Nor have we been provided with any other record support for the conclusion that defendant now asks us to reach. In addition, the conduct of defendant below simply belies the argument that he now presses before us. On the contrary, he permitted the

**14.** Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure provides in relevant part as follows:

"The defense of double jeopardy and *all other defenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint* other than that it fails to show jurisdiction in the court or to charge an offense *may be* *raised only by motion before trial.* The motion shall include all such defenses and objections then available to the defendant. *Failure to present any such defense or objection as herein provided constitutes a waiver thereof,* but the court for cause shown may grant relief from the waiver." (Emphases added.)

Superior Court trial to proceed to judgment without once mentioning or raising any objection to the procedure by which the Superior Court acquired jurisdiction of the charges. Indeed, at no time before he was convicted in the Superior Court did defendant ever raise this issue by motion or by other means. Pursuant to Rule 12 and our well established raise-or-waive rule, we deem this issue to be foreclosed on appeal. *See State v. Saluter*, 715 A.2d 1250, 1258 (R.I.1998) ("It is axiomatic that 'this [C]ourt will not consider an issue raised for the first time on appeal that was not properly presented before the trial court.' ") (quoting *State v. Gatone*, 698 A.2d 230, 242 (R.I.1997)).

■ Third, a portion of the defendant's motion for new trial argues that the private prosecutrix did not comply with the discovery requirements of Rule 16 of the Superior Court Rules of Criminal Procedure. The defendant, however, has also waived this contention. Although he now alludes to certain discovery requests that Mrs. Cronan and the attorneys who prosecuted this case supposedly ignored, the record contains no motion to compel compliance with any of defendant's discovery requests; nor did he otherwise object to the prosecution's alleged nondisclosure of requested information in any way that would have alerted the trial justice to the prosecution's supposed discovery failings. *See* Super. R.Crim. P. 16(g)(3), (i). Thus, defendant may not press these objections here when they were available for him to raise before or at the trial, yet he neglect-

ed to do so. *See State v. Anderson*, 752 A.2d 946, 948 (R.I.2000) ("According to our well-settled 'raise or waive' rule, issues that present themselves at trial and that are not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.' ") (quoting *State v. Morris*, 744 A.2d 850, 858–59 (R.I.2000); and *State v. Bettencourt*, 723 A.2d 1101, 1107 (R.I.1999)).

■ Finally, defendant argues that the trial justice erred in admitting certain "propensity evidence" at trial in violation of Rule 404(b) of the Rhode Island Rules of Evidence. At trial, however, defendant never lodged an objection to the admission of the evidence about which he now complains. Therefore, under our well-settled and oft-repeated raise-or-waive rule, defendant may not argue this point now. *See State v. Rieger*, 763 A.2d 997, 1004 (R.I.2001).

### III

### Alleged *Brady v. Maryland* Violations

■ After disposing of defendant's belated arguments concerning alleged Rule 16 violations, the remainder of defendant's new-trial motion amounts to an assertion that Mrs. Cronan's attorneys violated their constitutional duty to disclose exculpatory evidence to him as required by *Brady* and its progeny [15] because they failed to provide him with the complete medical records documenting Mrs. Cro-

---

**15.** We agree with the trial justice that the defendant's vague requests for certain *"Brady* material"—both during the trial and in his motion for new trial—lacked specificity. However, as the United States Supreme Court explained in *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 351 (1976), a prosecutor's obligation under *Brady* applies even in cases when the defen-

dant forwards only a general request for *Brady* material, or even when the defendant has failed to make any *Brady* request at all. We therefore analyze defendant's claim as a general request for *Brady* material, and decide whether the facts of this case show that the private prosecutors violated their constitutional duty to provide exculpatory material to the defense.

nan's mental-health problems and treatments.

 Although they were privately employed, the attorneys who prosecuted this case represented the state. Thus, they were required to meet all the pretrial disclosure and discovery responsibilities expected of any public prosecutor. In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. Later cases have explained that a prosecutor's duty to disclose such evidence applies even in the absence of a request by the accused. Moreover, the prosecution's duty to disclose such evidence can encompass impeachment material as well as purely exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985); *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 351–52 (1976).

 To meet the standard of "materiality" and establish a *Brady* violation, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494. Our previous decisions, however, have adopted a deliberate suppression standard that provides even greater protection to criminal defendants than the one articulated in *Bagley*. *See State v. Wyche*, 518 A.2d 907, 910 (R.I. 1986); *In re Ouimette*, 115 R.I. 169, 177,

342 A.2d 250, 254 (1975). In *Wyche*, we explained:

> "When the failure to disclose is deliberate, this court will not concern itself with the degree of harm caused to the defendant by the prosecution's misconduct; we shall simply grant the defendant a new trial. *Id. The prosecution acts deliberately when it makes 'a considered decision to suppress * * * for the purpose of obstructing' or where it fails 'to disclose evidence whose high value to the defense could not have escaped * * * [its] attention.'*" *Wyche*, 518 A.2d at 910 (quoting *United States v. Keogh*, 391 F.2d 138, 146–47 (2d Cir. 1968)). (Emphasis added.)

We also explained in that case, however, that the *Brady* doctrine has its limits and does not "extend an open invitation to criminal defendants to comb prosecution files for any or all information that might be remotely useful." *Wyche*, 518 A.2d at 908 (citing *Agurs*, 427 U.S. at 111, 96 S.Ct. at 2401, 49 L.Ed.2d at 354). Thus, the nondisclosed information still must be material in the sense that its "high value to the defense could not have escaped * * * [the prosecution's] attention." *Id.*, at 910.

Applying the *Wyche* doctrine to the circumstances in this case, we hold that defendant failed to establish a *Brady* violation here. First, the parties' concurrent Family Court divorce action involved the same parties as the case at bar. That action spawned substantial discovery and resulted in the production of many if not all of the very medical and psychological records concerning Mrs. Cronan that defendant claimed were not provided to him in the criminal case. The defendant, through his Family Court trial counsel, had access to all the sealed medical and psychological records that were produced in the Family Court action.[16] Indeed, de-

---

**16.** In contrast to defendant's arguments here, as well as to defense counsel's February 5, 1999 affidavit, the record reveals that defendant knew of the existence of much of the

fendant introduced several of them into evidence in the divorce case, and his gleanings from those records now form the basis of his *Brady* urgings here.[17] We decline to read the prosecution's *Brady* obligation so formalistically as to require the prosecution to deliver to a defendant all the same documentary information and material that both sides knew was already produced or otherwise available to them as a result of the concurrent divorce proceedings in the Family Court. Given these circumstances, no record support exists for the suggestion that the prosecution made " 'a considered decision to suppress * * * for the purpose of obstructing' " any evidence that was favorable to defendant's case. *Wyche,* 518 A.2d at 910. *See United States v. Earnest,* 129 F.3d 906, 910 (7th Cir.1997) ("[E]vidence is not regarded as 'suppressed' by the government when the defendant has access to the evidence before trial by the exercise of reasonable diligence.").

Furthermore, through the divorce proceeding and other means, including defendant's knowledge of his wife's mental-health problems and her treatments for them, the defense knew about the alleged "high value" of the medical and other evidence documenting this situation well before the criminal trial started. Nevertheless, the defense either failed or consciously decided not to use or to obtain access to all that evidence or to subpoena certain medical records or other alleged impeachment material that it now

concludes would have undercut the prosecution's case. *Cf. United States v. Zichettello,* 208 F.3d 72, 103 (2d Cir.2000) ("Even if evidence is material and exculpatory, it 'is not "suppressed" ' by the government within the meaning of *Brady* 'if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.' ") (quoting *United States v. Zackson,* 6 F.3d 911, 918 (2d Cir.1993); and *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982)).

The trial justice explained in his decision that, despite Mrs. Cronan's history of mental illness, her "many moments of lucidity and proper conduct" provided ample support for finding defendant guilty of assault. To counter or impeach these "moments of lucidity," the defense failed to establish that it did not already know or have access to as much information concerning Mrs. Cronan's mental-health history as did the prosecution. Given these circumstances, *Brady* did not require the prosecution to produce this same medical evidence concerning Mrs. Cronan's mental-health diagnoses and treatments that already had been made available, or otherwise was known to defendant through the continuing divorce proceedings with his wife.

 Finally, to the extent that defendant's motion for a new trial was premised upon "newly discovered evidence," instead of unproduced *Brady* material, defendant

---

medical evidence he now deems to have been suppressed or undisclosed by the prosecution. For example, according to the Family Court records, Dr. Cronan offered into evidence as trial exhibits several of Mrs. Cronan's medical and psychological records in the divorce action nearly two years before the date of his arraignment in Superior Court. In addition, the defendant highlighted other *"Brady* material" in the new-trial motion that he admits was taken from testimony given in his divorce

action nearly six months before his arraignment.

17. While his motion for new trial was pending, the Family Court granted defendant's motion to review the medical records placed under seal in the divorce action. There is nothing in the record to indicate that defendant could not have obtained access to these sealed Family Court records before this Superior Court criminal trial began.

failed to show reasonable diligence in attempting to discover the medical and other evidence that he now asserts was "newly discovered" for use at the original trial. *See State v. Bassett,* 447 A.2d 371, 375 (R.I.1982). Furthermore, the additional medical evidence concerning Mrs. Cronan's psychological condition appears to have been merely cumulative to the defense that was presented—one that concentrated upon and highlighted this evidence and endeavored to exploit all its adverse ramifications for Mrs. Cronan's credibility. Therefore, we remain unconvinced that it otherwise would have affected the outcome of the trial. *See, e.g., Mastracchio v. Moran,* 698 A.2d 706, 714 (R.I.1997); *State v. Mastracchio,* 605 A.2d 489, 494 (R.I.1992).

### Conclusion

For these reasons, we affirm the conviction below and deny the defendant's appeal.

Chief Justice WILLIAMS and Justice GOLDBERG did not participate.