STATE

v.

Michael B. CHALK.

No. 2002–6–C.A.

Supreme Court of Rhode Island.

Dec. 20, 2002.

Jane M. McSoley/Aaron L. Weisman, Providence, for Plaintiff.

John P. Larochelle, Providence, for Defendant.

Before WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The defendant, Michael B. Chalk, was convicted on four counts of sexual assault involving three minors, whom we shall refer to as Abe, Ben, and Carl. Specifically, judgments of conviction were entered on one count of first-degree sexual assault of Abe, one count of first-degree child molestation of Ben, and two counts of second-degree sexual assault of Carl. On appeal, the defendant argued that the trial justice erred in rejecting his alternate motions for a mistrial or for a continuance after the state disclosed additional evidence that the defendant argued could be used to impeach Carl's testimony at trial. The defendant also claimed that the trial justice violated Rule 404(b) of the Rhode Island

Rules of Evidence by admitting evidence of an alleged uncharged act of sexual misconduct by the defendant. Last, the defendant contended that the trial justice erred in denying his motion for a new trial.

### Facts and Procedural History

The four counts stemmed from similar incidences with the complainants, each of whom testified. Abe, the first complainant to testify, related that during the summer of 1984, defendant, then an assistant scoutmaster for the Boy Scouts of America, made sexual advances on then fifteen-year-old Abe, who was sleeping at a mutual friend's house. Next, Ben testified that in the early morning hours of August 2, 1999, defendant, while an assistant scoutmaster at the Yawgoog Boy Scout camp (Yawgoog), sexually assaulted Ben while he was sleeping inside a sleeping bag on the top bunk in a tent. Ben was thirteen years old at the time. Last, Carl testified that in December 1998 and March 1999, while defendant worked as a daily living specialist for children at Harmony Hill House, a residential group home for troubled boys, defendant twice instigated sexual touching with Carl, who was then fifteen and living at the home. Carl also was enrolled in Harmony Hill School's program for boys with behavioral problems.

At trial, defendant sought to impeach Carl, who testified against defendant, by questioning him during cross-examination about Carl's several past instances of bad conduct. Some of the acts involved Carl's disciplinary violations while at Harmony Hill House. To fulfill defendant's request for "[a]ll of [Carl's] records at The Harmony Hill School" in his motion for exculpatory evidence, the state had delivered more than 100 pages from Harmony Hill at least six months before trial, documents that defendant acknowledged having received during the pretrial period. Just before the state called Carl to the stand,

however, defendant realized that the 100 pages from Harmony Hill were incomplete. The defendant moved for a mistrial or, alternatively, for a continuance to obtain and review any additional Harmony Hill documents. The trial justice denied defendant's motion for a mistrial and delayed a decision on the continuance until the additional material arrived. Later that afternoon, one day before his scheduled cross-examination of Carl, defendant received an additional 844 pages from Harmony Hill. The next morning, defendant renewed his motions for a mistrial and for a continuance. The trial justice denied both motions. *See post.* The defendant appealed both denials as violations of due process.

Before cross-examining Carl, defense counsel discovered in the new material sent by Harmony Hill that Carl had been placed at the school "to satisfy [a Connecticut] Court['s] expectations relative to [Carl's] guilt * * * to a larceny/burglary charge." The defendant again moved for a mistrial or, in the alternative, a continuance, this time alleging that the state failed to exercise "reasonable diligence" in investigating Carl's juvenile criminal record. The trial justice denied both motions, noting that defendant could use the newly-acquired information when he cross-examined Carl. The defendant also appealed these denials.

Ben testified at trial that, in addition to the incident for which defendant was charged, defendant had touched him sexually one month before the assault at Yawgoog. In ruling on defendant's *in limine* motion to bar this evidence, the trial justice found that the testimony was admissible under Rule 404(b), as evidence of defendant's lewd disposition towards Ben. The defendant appealed, arguing that the prejudicial effect of the testimony substantially outweighed its probative value.

After the jury found him guilty on the four counts, defendant moved for a new trial, arguing that the evidence on each count was insufficient to convict. The trial justice denied the new trial motion, and defendant appealed. Further facts will be presented in discussing the issues on appeal.

## Due Process Concerns From Delayed Production of Documents

The defendant contended that the trial justice erred in denying his alternate motions for a mistrial or a continuance given the state's late production of the Harmony Hill documents and Carl's juvenile record.[1] As a preliminary matter, it is important to note that defendant never requested that a subpoena issue to either the state or Harmony Hill pursuant to Rule 17(c) of the Superior Court Rules of Criminal Procedure. When asked at trial whether there was ever a Rule 17(c) subpoena seeking the Harmony Hill documents, defendant's counsel replied "it is entirely possible I did not issue the 17(c). I believe I may have. I'm not going to guarantee that I did." The record fails to demonstrate that defendant sought the production of Harmony Hill documents by a subpoena issued pursuant to Rule 17(c).[2]

■ The defendant's sole request for the Harmony Hill documents was in his motion for exculpatory evidence, on October 17, 2002, which did not cite a rule. This motion was in addition to defendant's motion for discovery and inspection, on November 30, 1999, which was made "pursuant to Rule 16 of the Rhode Island Superior Court Rules of Criminal Procedure." The defendant stated that the grounds for the additional motion for exculpatory evidence were "*Brady v. Maryland*, 373 U.S. 83 [, 83 S.Ct. 1194, 10

---

1. The state has alleged that the trial justice's decision to recess at 3 p.m. on the day the additional documents arrived from Harmony Hill amounted to a continuance. However, because the state did not deliver all the records until 4:30 that afternoon, and the trial started promptly the next morning, the recess could not be deemed a continuance.

2. In contrast, on October 24, 2000, defendant filed a motion for issuance of a subpoena duces tecum, pursuant to Rule 17(c) of the Superior Court Rules of Criminal Procedure, to the Department of Children, Youth, and Families (DCYF) and the Rhode Island Family Court. These were the only entities to whom this subpoena was requested to issue; there was no mention of the Harmony Hill records, and the subpoena's sole mention of Carl was as one of the individuals concerning whom defendant sought "any and all information" from DCYF. On November 30, 2000, defendant filed another motion requesting that a subpoena issue to DCYF and the Family Court. This subpoena was substantially the same as the October 24 subpoena, except that it added a few individuals, including Carl, to the list from which it sought from the Family Court: "All adjudications of delinquency of waywardness for purposes of impeachment

* * *." On January 24, 2001, defendant again filed a motion for a subpoena substantially the same as the other two, though this one only sought information from DCYF concerning Carl and one other individual. On February 2, 2001, a Superior Court justice ordered that this subpoena "shall issue" to DCYF.

A criminal case action report, dated March 9, 2001, noted, "One envelope of records from DCYF received and removed by [the Superior Court justice]. Placed in locked file cabinet in front of clerk's office." On March 21, 2001, defendant filed a motion for a continuance, on the grounds that the DCYF material, which included more than 500 pages, was not timely filed in accordance with the subpoena. This motion, as well as the state's motion for a continuance based on the unavailability of one of its witnesses, was granted. The defendant's motion for a continuance based on the Rule 17(c) material requested from DCYF was thus not on appeal to this Court. The denial of defendant's motion for a continuance at issue here regards solely the Harmony Hill documents, which were requested not through a subpoena but through a motion for exculpatory evidence.

L.Ed.2d 215] (1963), and its progeny, including *State v. Wyche*, 518 A.2d 907 (R.I. 1986), and Rhode Island Constitution [a]rticle [1], [s]ections 2 and 10, and the United States Constitution Amendments V, VI, and XIV." Among the items requested were "All of [Carl's] records at The Harmony Hill School, including his disciplinary records." On February 19, 2001, defendant's counsel was issued a Notice of Court Appearance directing him to appear at the Superior Court on March 2, 2001, with respect to the "Motion For Exculpatory Evidence." In a criminal case action report, dated February 16, 2001, on "Defendant's Motion For Exculpatory Evidence," the Superior Court justice noted: "Records received for Harmony Hills [*sic*] School. Filed in locked cabinet in Clerk's office." Shortly thereafter, defendant received the 100 pages that he eventually determined, at trial, to be incomplete.[3]

■ We have held that with respect to "persons whom the [s]tate expects to call as witnesses," Rule 16 of the Superior Court Rules of Criminal Procedure requires that the state produce only prior recorded statements of a witness, a summary of the witness's expected trial testimony, and any records of prior convictions. *State v. Brown*, 709 A.2d 465, 469 (R.I. 1998); *State v. Kelly*, 554 A.2d 632, 635 (R.I.1989). When evidence does not fit one of these three categories, but may nonetheless be helpful to defendant's effective cross-examination of a witness, a defendant's right to that evidence arises from the right of confrontation, and thus becomes an issue "only when a defendant is improperly denied the ability to confront and to effectively cross-examine an ad-

verse witness at trial." *Kelly*, 554 A.2d at 635. We are of the opinion that in this case defendant's right to confrontation was not violated because defendant was never "improperly denied the ability to confront and to effectively cross-examine" Carl, who was a witness against defendant. *Brown*, 709 A.2d at 469. Moreover, we believe that defendant's due process rights were not violated here even if the evidence was required to have been produced before trial.

■ Having determined that there was no violation of Rule 16 in this case, we turn now to defendant's argument that the state failed to comply with its obligation to produce exculpatory evidence in accordance with *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. The duty of the state to produce evidence favorable to the accused is grounded in the guarantee of due process in a criminal trial and imposes an obligation on the prosecution to produce evidence that is "material either to guilt or punishment," even in the absence of a request by the accused. *Cronan ex rel. State v. Cronan*, 774 A.2d 866, 880 (R.I. 2001) (quoting *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197, 10 L.Ed.2d at 218). The duty to disclose can encompass impeaching material as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985).

■ The first factor we examine in the due process inquiry is the reason for the nondisclosure. *Cronan*, 774 A.2d at 880. We have consistently applied a "deliberate

---

**3.** It is clear from the transcript that Harmony Hill initially sent the defendant "just a couple of pages" as part of the state's efforts to comply with defendant's exculpatory evidence motion. The defendant immediately noted that Harmony Hill should have more documents about Carl, and defendant's counsel and the prosecutor discussed this in chambers at some point in the proceedings. The prosecutor called Harmony Hill, and officials there sent over additional documents totaling roughly 100 pages.

suppression standard that provides even greater protection to criminal defendants than the one articulated [by the United States Supreme Court]." *Id.* A nondisclosure is deliberate, and thus grounds for a new trial regardless of the degree of harm to the defendant, whenever the prosecution "makes '*a considered decision to suppress* * * * *for the purpose of obstructing*' or where it fails '*to disclose evidence whose high value to the defense could not have escaped* * * * *[its] attention.*'" *Id.* (quoting *State v. Wyche,* 518 A.2d 907, 910 (R.I.1986) and *United States v. Keogh,* 391 F.2d 138, 146–47 (2d Cir.1968)).

In this case, there is no allegation that the state made a deliberate or considered decision to suppress the additional Harmony Hill documents. Therefore, we must consider whether the information was of such a high value to defendant that it could not have escaped the state's attention. The defendant has articulated no basis on which we can conclude that the state should have known that the records it originally produced were incomplete. Further, defendant has uncovered no evidence suggesting that the documents could not have escaped the state's attention. Therefore, the late disclosure of the additional Harmony Hill materials was not deliberate, but rather "absolutely unintentional [and] inadvertent." *In re Ouimette,* 115 R.I. 169, 179, 342 A.2d 250, 255 (1975). Moreover, as the trial justice noted, the missing Harmony Hill materials were "uniquely familiar" to defendant, who was employed by Harmony Hill for much of the period to which they refer. Any responsibility for the delayed production of documents properly falls on defendant, who was afforded six months to examine the records that were previously produced.

When, as here, the nondisclosure was unintentional, we next consider the prejudicial effect of the nondisclosure.

*State v. Oliveira,* 774 A.2d 893, 905 (R.I. 2001). In these circumstances, defendant bears the burden of establishing that it was prejudicial, *id.,* by showing that the nondisclosed evidence was material because "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286, 301 (1999) (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494 (Blackmun, J., concurring)).

The defendant's cross-examination of Carl delved into his numerous specific acts of misconduct and elicited from Carl multiple admissions of misdeeds and deception. For example, defense counsel gained Carl's admission that he had been suspended from Smithfield High School for "touching a girl" and "a bunch of people" in a sexually inappropriate manner. Defense counsel also asked Carl about his infractions while at Harmony Hill. In response, Carl acknowledged that he stole jewelry and other items, that he was placed on "unsafe status" many times for lying to the staff, and that he lodged a false accusation of stealing against defendant. In addition, counsel elicited Carl's admission that he stole a picture frame from a home, assaulted his grandmother and sister, and stole from various family members.

At most, had defendant received the additional Harmony Hill documents earlier, defense counsel may have elicited from Carl some additional impeaching admissions. In our opinion, defendant's merely raising the possibility of doing so is not sufficient to establish that, had the evidence been produced sooner, there is a reasonable probability that defendant would not have been convicted. We conclude here, as we did in *State v. Bassett,*

447 A.2d 371, 377 (R.I.1982), that any additional impeaching statements "would merely have been cumulative for impeachment purposes," and thus they "fail[ ] the *test of the likelihood that [they] would have produced a reasonable doubt of guilt.*" Therefore, we hold that the late disclosure in this case did not violate defendant's right to due process because it was not deliberate; and there was no reasonable probability that the jury verdict would have been different had the additional records from Harmony Hill been produced earlier.

In addition, no allegation has been made that the state made a considered effort to suppress Carl's out-of-state juvenile record. The only known reference to the juvenile record was in the additional Harmony Hill documents, and consequently the juvenile record was not information that "could not have escaped * * * [the state's] attention" for the same reason the documents themselves were not. *Cronan*, 774 A.2d at 880 (quoting *Wyche*, 518 A.2d at 910 and *Keogh*, 391 F.2d at 146–47). Therefore, defendant had the burden of establishing that he was prejudiced by the late disclosure. On cross-examination, defense counsel did ask Carl about his juvenile record and specifically inquired whether he had "pled guilty * * * to a larceny and a burglary charge." Moreover, Carl testified on redirect that he had "had some problems with stealing" and "not always telling the truth." Indeed, defendant argued that a new trial was warranted in this case precisely *because* so much evidence was introduced challenging Carl's credibility. Furthermore, the defendant has not identified how his defense would have been different had he learned about the juvenile record sooner. *See State v. Allessio*, 762 A.2d 1190, 1192–93 (R.I.2000) (per curiam). Thus, defendant has not met his burden of showing that, had the additional documents been produced earlier, there is a

reasonable probability that he would not have been convicted. Therefore, the material that defendant sought from Harmony Hill is not *Brady* exculpatory evidence that the state was obligated to produce earlier.

**Motions for Mistrial or Continuance**

■ Having established that the late production of documents did not violate defendant's right to due process of the law, we next examine whether the trial justice nonetheless abused his discretion in rejecting defendant's motions for a mistrial, or, in the alternative, for a continuance. Because we consistently have held that the trial justice is in the best position to determine whether any harm has resulted from noncompliance with discovery motions and whether the harm can be mitigated, we refrain from overturning a justice's denial of a motion for mistrial or for a continuance absent a clear abuse of discretion. *State v. Brisson*, 619 A.2d 1099, 1102 (R.I. 1993); *State v. Coelho*, 454 A.2d 241, 244–45 (R.I.1982).

■ Generally, the declaration of a mistrial is inappropriate if a less drastic sanction, such as a continuance, would effectively serve the same purpose. *State v. Musumeci*, 717 A.2d 56, 63 (R.I.1998). Here, in the midst of a jury trial, defendant made two motions for mistrial. Clearly, the declaration of a mistrial produces disruption in the efficient administration of justice. *See Coelho, post.* The defendant has not articulated any reason why measures less severe than a mistrial would have been insufficient in these instances. Accordingly, we decline to hold that the trial justice abused his discretion in dismissing defendant's midtrial mistrial motions and proceed to review the justice's denial of defendant's two motions for a continuance.

Overall, "[i]n considering a continuance, the trial justice should balance the defendant's right to a fair trial against the 'societal interest in the "prompt and efficient administration of justice." ' " *Coelho,* 454 A.2d at 246 (quoting *Slappy v. Morris,* 649 F.2d 718, 721 (9th Cir.1981) and *Gandy v. Alabama,* 569 F.2d 1318, 1323 (5th Cir.1978)). Ordinarily, the receipt of more than 800 pages of documents relating to a key witness late in the afternoon on the day before the witness will be cross-examined would signal that a continuance would be appropriate. Here, however, our review of the documents in contention satisfies us that the trial justice sufficiently weighed the interests at stake in reaching his conclusion to deny a continuance.

When initially informed that some of the Harmony Hill documents were missing, after the state called Carl to testify, the trial justice set forth a protocol:

> "I'm going to allow the State to continue with its case with the understanding and direction that the authorities from Harmony Hill will make every effort to get this information to the Court, and once it is delivered the Court will then make a decision as to how it should be handled so that defense counsel can have an opportunity to review the information and at the same time recognizing that since there is a jury present we want to try as best we can to accommodate all concerned including the jurors."

The additional documents arrived that afternoon, and the next morning, before Carl was cross-examined, the trial justice informed defense counsel:

> "Then yesterday, after [Carl] testified in direct [and after the additional documents from Harmony Hill arrived,] you suggested and I agreed and I think the State also agreed, that the prudent way [to proceed] would be to give you the evening to work on these documents and then start your cross-examination of [Carl] today. The materials were photocopied and were presented. We all had a chance to look at them yesterday and I do agree with you that there is a lot of material there, but it seems to me that even under the circumstances that you're in, and I think to a great extent it's caused by your own failure to act more quickly in this matter you still have time to review the materials and now adequately and properly cross-examine the witness."

In explaining his decision not to grant the continuance, the trial justice noted:

> "Much of [the additional Harmony Hill] material * * * is boiler plate. I grant you there is a lot of textual material there that can be reviewed. I believe from the perusal that I did this morning [analyzing the documents] could be done in a couple of hours by anyone who is trained as you are to review the materials. That's why I felt the time I gave you yesterday was adequate time to properly prepare in this matter."

Based on our review of the documents, we concur with the trial justice's assessments of the material contained therein. Many pages were standard forms from Harmony Hill on which notations or some text was written. The overnight recess cited by the trial justice would have provided sufficient time for reviewing the material. Because he reviewed the documents and drew reasonable, well-articulated conclusions therefrom, the trial justice did not abuse his discretion in determining that a continuance was not necessary, despite the late disclosure of the additional Harmony Hill documents.

When defendant's motion for a continuance based on the late disclosure of Carl's juvenile record was called to the trial jus-

tice's attention just prior to Carl's cross-examination, the justice pointed out that the defense still had ample opportunity to use the new information to impeach Carl. In denying the motion, the trial justice articulated a sound rationale for his decision, and therefore he did not abuse his discretion.

### Motion to Exclude an Uncharged Act of Sexual Misconduct

 The next issue on appeal is whether the trial justice erred in admitting into evidence testimony concerning defendant's uncharged act of sexual assault against Ben. At trial, Ben testified that, over July Fourth weekend in 1999, about one month before the assault at Yawgoog, he went camping and slept in a trailer park with defendant and the nine-year-old son of one of defendant's friends. At night, while sleeping on a fold-out couch, Ben awoke to find defendant sexually touching him. In response to defendant's *in limine* motion to exclude this evidence, the trial justice ruled that testimony on the July assault was admissible under Rule 404(b) of the Rhode Island Rules of Evidence for the limited purpose of establishing defendant's "lewd disposition" toward Ben because the incident was similar in nature and location to the count before the jury, and the uncharged act occurred five or six weeks before the incident at issue.

 Rule 404(b) provides in pertinent part:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident * * *."

This Court has recognized four restrictions on the use of prior bad acts: (1) the acts must not be too remote in time from the charged act; (2) the evidence should be used sparingly and should be excluded if it is merely cumulative; (3) the evidence should be admitted only to prove charges lodged against the defendant; and (4) the trial justice should designate the specific exception to which the evidence is relevant and should instruct the jury on the limitations within which the testimony should be used. *State v. Sorel,* 746 A.2d 704, 706–07 (R.I.2000) (per curiam) (citing *State v. Gomes,* 690 A.2d 310, 316–17 (R.I.1997), and *State v. Jalette,* 119 R.I. 614, 627, 382 A.2d 526, 533 (1978)). Provided that the trial justice comports with these restrictions, "[a]dmission of uncharged sexual misconduct evidence under Rule 404(b) of the Rhode Island Rules of Evidence is a decision left to the exercise of the trial court's sound discretion." *State v. Mulcahey,* 762 A.2d 1214, 1216 (R.I.2000) (per curiam).

The trial justice in this case closely abided by the restrictions we have delineated. This Court has affirmed the admission of uncharged acts of sexual misconduct more remote in time from a charged act than the five or six weeks that separated the two acts here. In *State v. Toole,* 640 A.2d 965, 969–71 (R.I.1994), for example, the two acts were seven years apart. In our opinion, therefore, the uncharged incident and the charged assault here were "relatively contemporaneous" with each other, *State v. Rice,* 755 A.2d 137, 147 (R.I.2000), and not so remote as to be inadmissible. In admitting evidence of the July incident, the trial justice pointed out the proximity in time and the similarity of the circumstances and nature of the charged and uncharged acts in finding the evidence "necessary and relevant." *Gomes,* 690 A.2d at 317. Moreover, it is undisputed

that the evidence was admitted solely to prove charges against the defendant.

■ The trial justice also designated the specific exception under which the evidence was admitted and gave an appropriate limiting instruction. He found the evidence of the previous encounter relevant to show that defendant had a "lewd disposition" toward this witness, one of the acceptable purposes for which uncharged sexual acts may be admitted. *Mulcahey,* 762 A.2d at 1216. Such evidence is relevant in circumstances in which it demonstrates a defendant's "lewd intent and lascivious designs toward [a] particular victim of his charged sexual misconduct." *Rice,* 755 A.2d at 147. The conduct here, which established that defendant touched the same complainant in a sexual manner twice in five or six weeks, clearly demonstrated defendant's lewd disposition toward Ben.

In addition, the trial justice gave an adequate and appropriate limiting instruction, directing the jury that it could not "draw the inference that the Defendant committed the criminal offense he is on trial for simply because on a prior occasion he may have acted improperly." He pointed out that evidence of other bad acts cannot be used to prove a person's character, nor could it be used to show that defendant was acting in conformity with that character when he committed the alleged acts at issue. The trial justice added, "To the extent that you decide to consider this evidence, it is admitted for your consideration for the limited purpose of deciding whether the Defendant exhibits a lewd disposition toward this witness. You may not consider this evidence for any other purpose." This instruction properly made clear to the jury the limited purpose for which the evidence could be used. *State v. Hopkins,* 698 A.2d 183, 188 n. 5 (R.I.1997). Given the trial justice's compliance with all the relevant restrictions on admitting Rule 404(b) evidence, we conclude that he did not abuse his discretion in admitting Ben's testimony describing the earlier uncharged incident of sexual assault.

### Motion for New Trial

■ Last, defendant argued that the trial justice erred in denying his motion for new trial. Specifically, defendant pointed out that no one actually saw the person who assaulted Ben at Yawgoog, and the witnesses who identified defendant as the assailant did so solely on the basis of his recognizable sniffle and laugh. Further, defendant argued that Abe's testimony that he was asleep for much of the duration of the sexual assault on him and Carl's admission to numerous crimes and bad acts supported the conclusion that neither of these witnesses presented credible testimony.

■ In considering a motion for new trial, "the trial justice must act as a thirteenth juror and exercise his or her independent judgment on the credibility of witnesses and the weight of the evidence." *State v. Marini,* 638 A.2d 507, 515 (R.I. 1994). Further, the trial justice must "articulate[] a sufficient rationale" for denying the motion. *State v. Banach,* 648 A.2d 1363, 1367 (R.I. 1994). If the justice does so, the result "will be disturbed only if the trial justice has overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong." *Id.* In this case, the trial justice summarized all the evidence presented at trial. He did not err when he accepted evidence of recognizable sounds as sufficient to identify the defendant as Ben's assailant, nor was the trial justice clearly wrong when he stated that he believed the three complainants and found them to have been "absolutely credible, truthful, and forthright" in their testimony

at trial. The justice discerned from the complainants' testimony "a pattern" in which the defendant "simply waited for what he saw as the opportune time to perform sexual acts on these young vulnerable children * * *." After balancing the evidence, the trial justice found that he would have come to the same conclusion as the jury did. Because the trial justice carried out each step of the new trial analysis appropriately, we affirm the denial of the defendant's motion for a new trial. *Id.*

## Conclusion

In summary, we deny and dismiss the defendant's appeal and affirm the judgments of conviction of the Superior Court, to which we return the papers in this case.