Michael B. CHALK

v.

STATE of Rhode Island.

No. 2006–103–Appeal.

Supreme Court of Rhode Island.

June 20, 2008.

Richard Corley, Esq., for Petitioner.

Aaron Weisman, Esq., Providence, for Respondent.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

### OPINION

Chief Justice WILLIAMS, for the Court.

The applicant, Michael B. Chalk (applicant or Chalk), appeals the denial of his application for postconviction relief. On appeal, Chalk contends that the hearing justice erred in denying his application for postconviction relief on the basis of ineffective assistance of counsel. To support this contention, Chalk alleges that his trial counsel committed several errors, including: (1) failing to raise on appeal the issue of the trial justice's decision to close the courtroom; (2) failing to object to the state's amended indictment; (3) failing to subpoena certain documents during discovery; and (4) limiting his communication with Chalk over the course of a weekend during trial. For the reasons set forth herein, we affirm the hearing justice's denial of Chalk's application for postconviction relief.

### I

### Facts and Travel

On November 23, 1999, Chalk was indicted by a grand jury on two counts of first-degree child molestation, one count of assault with intent to commit first-degree sexual assault, one count of disorderly conduct/indecent exposure, and two counts of second-degree sexual assault. Before the trial started, the state offered an amended indictment. The amended indictment charged only one count of first-degree child molestation and did not charge assault with intent to commit first-degree sexual assault. In addition, the amended indictment contained a new charge of first-degree sexual assault.

During the trial, one of the victims, who was scheduled to testify, filed a motion requesting that he be allowed to testify by closed-circuit television or in a closed courtroom. After considering a letter filed by the victim's social worker and Chalk's objection, the trial justice decided that forcing the victim to testify in an open courtroom would have a direct impact on him. Based on those considerations, the trial justice limited spectators during the victim's testimony to members of the media and to Chalk's directly related family members, including his father, mother, sister, and brother.

Later in the trial, Chalk realized that he had not received full discovery from the group home in which one of the victims had lived. After requesting the missing documents, Chalk received an additional 844 pages the night before his trial counsel was to cross-examine the victim. His motion for a continuance was rejected at that time, and cross-examination went forward.

Finally, trial recessed on a Friday while Chalk was under cross-examination. Because Chalk still was under cross-examination, his counsel admitted that he had instructed Chalk not to communicate with him about his trial testimony over the course of the weekend. Chalk, on the other hand, asserts that his counsel told him there was to be no communication whatsoever.

Before submitting the case to the jury, the trial justice granted Chalk's motion for judgment of acquittal on the disorderly conduct/indecent exposure count. The other counts were submitted to the jury, and, on June 26, 2001, the jury found Chalk guilty of one count of first-degree sexual assault, one count of first-degree child molestation, and two counts of sexual assault molestation against three minor boys.

Chalk was sentenced to forty years, twenty to serve, with twenty years suspended, with probation for first-degree sexual assault; forty years, twenty to serve, with twenty years suspended, with probation for first-degree child molestation; and fifteen years, five to serve, with ten years suspended, with probation on both of the second-degree sexual assault counts. All sentences were to run concurrently, and no-contact orders were issued. Chalk appealed, and his conviction was affirmed by this Court in *State v. Chalk*, 816 A.2d 413 (R.I.2002).

In May 2003, Chalk filed the instant application for postconviction relief, alleging ineffective assistance of counsel. After hearing testimony, including testimony from Chalk's trial counsel, the hearing justice issued a bench decision on December 15, 2005, denying Chalk's application for postconviction relief. Chalk timely filed a notice of appeal.

## II

### Analysis

The applicant appeals the denial of his application for postconviction relief, arguing that the hearing justice should have granted his application based on allegations of ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution. The applicant asserts that the alleged errors detailed above should "constitute enough cumulative error for this Court to grant a new trial."

### A

### Standard of Review

■ Postconviction relief is a statutory right available to a convicted defendant who contends that his original conviction or sentence violated rights afforded to him under the state or federal constitution. *Young v. State*, 877 A.2d 625, 628 (R.I. 2005) (citing G.L.1956 § 10–9.1–1(a)(1)). This Court "afford[s] great deference to findings of historical fact by the hearing justice." *Burke v. State*, 925 A.2d 890, 892 (R.I.2007) (quoting *Ferrell v. Wall*, 889 A.2d 177, 183–84 (R.I.2005)). However, "this Court reviews '*de novo* any postconviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.'" *Id.* at 892–93 (quoting *Ferrell*, 889 A.2d at 184). "Moreover, an applicant bears the burden of proving, by a preponderance of the evidence, that he is entitled to postconviction relief." *Id.* at 893 (citing *Larngar v. Wall*, 918 A.2d 850, 855 (R.I.2007)).

### B

### Ineffective Assistance of Counsel

■ The applicant asserts that he was afforded ineffective assistance of counsel both at trial and on appeal. For claims of ineffective assistance of counsel, "the benchmark issue is whether 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Ferrell*, 889 A.2d at 191 (quoting *Young*, 877 A.2d at 629). Furthermore, "[a] claim of ineffective assistance against privately retained counsel likely will fail 'unless the attorney's representation [was] so lacking that the trial had become a farce and a mockery of justice.'" *Burke*, 925 A.2d at 893 (quoting *Vorgvongsa v. State*, 785 A.2d 542, 548 (R.I.2001)). *See also Moniz v. State*, 933 A.2d 691, 696 (R.I.2007).

■ To determine whether an applicant has met his burden, this Court has adopted the two-part test announced by the United States Supreme Court in

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Kholi v. Wall,* 911 A.2d 262, 264 (R.I.2006) (citing *Barboza v. State,* 484 A.2d 881 (R.I. 1984)).

> "The *Strickland* test requires a defendant to show (1) 'that counsel's performance was deficient, to the point that the errors were so serious that trial counsel, did not function at the level guaranteed by the Sixth Amendment,' and (2) 'that such deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial.' " *Young,* 877 A.2d at 629 (quoting *Bustamante v. Wall,* 866 A.2d 516, 522 (R.I. 2005)).

■ Furthermore, a claim of ineffective assistance of counsel does not open the door for this Court to second-guess every decision made by defense counsel at trial. *Vorgvongsa,* 785 A.2d at 549 ("[T]actical decisions by trial counsel, even if ill-advised, do not by themselves constitute ineffective assistance of counsel."). We need ensure only that the accused was "assisted by an attorney, whether retained or appointed, who play[ed] the role necessary to ensure that the trial [was] fair." *Strickland,* 466 U.S. at 685, 104 S.Ct. 2052.

## 1

## Appeal

■ The applicant first contends that his defense counsel should have raised the trial justice's decision to close the courtroom on appeal. He further asserts that his trial counsel's failure to raise that issue amounted to ineffective assistance of counsel.

■ We pause to note that, to provide effective assistance under the *Strickland* test, "appellate counsel * * * need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Therefore, to meet both *Strickland* prongs, an applicant must demonstrate that the omitted issue was not only meritorious, but "clearly stronger" than those issues that actually were raised on appeal. *Id.*

The applicant's trial counsel submitted a brief opposing the motion to close the courtroom to spectators. In rendering his bench decision on the motion, the trial justice cited appropriate authority, *State v. Santos,* 122 R.I. 799, 413 A.2d 58 (1980), and balanced the presumptive need for a public trial against concern for the victim's well-being. The trial justice relied on a letter from a social worker and stated that the presence of spectators "may directly impact this witness."

In light of this Court's jurisprudence at the time of the appeal from the judgment of conviction, it was reasonable for applicant's counsel to conclude that the trial justice's decision to close the courtroom was not a strong issue for appeal. *Santos,* 122 R.I. at 806–07, 413 A.2d at 63; *see also State v. Ucero,* 450 A.2d 809, 813 (R.I. 1982). Despite the lack of an evidentiary hearing, the trial justice attempted to balance the interests involved, and he crafted a compromise allowing the press and applicant's immediate family members to remain in the courtroom. Although later cases make it clear that an evidentiary hearing and clearly stated findings are required,[1] we must consider the relative

---

1. Subsequent opinions from this Court cast serious doubt on the adequacy of the trial justice's findings in this case. *See, e.g., State*

*v. Torres,* 844 A.2d 155, 159 (R.I.2004) ("[T]he party seeking to close the hearing must advance an overriding interest[,] * * * the clo-

strength of the issues for appeal at the time that applicant's trial counsel made his decision. At the time, this Court's controlling opinion on the issue stated that "[t]he trial justice [is] obliged, * * * to strike an acceptable balance between the accused's right to a public trial and the need to protect the witness, paying particular attention that neither the scope nor the duration of the order violates the rights of an accused." *Santos*, 122 R.I. at 807, 413 A.2d at 63.

Given the state of the law at the time of applicant's appeal, we conclude that the courtroom closure issue was not "clearly stronger" than the discovery and due process issues applicant's trial counsel chose to pursue on appeal. *See Smith*, 528 U.S. at 288, 120 S.Ct. 746.

### 2

### Amended Indictment

The applicant further argues that his trial counsel's failure to object to the amended indictment and require the state to return the indictment to the grand jury amounted to ineffective assistance of counsel.[2] The applicant asserts that his trial counsel should have objected on the grounds that he never waived his right to a grand jury indictment as required by Rule 7(b) of the Superior Court Rules of Criminal Procedure.

■ First, applicant's argument concerning waiver is *completely without mer-*

it. The trial justice discussed the contents of the new indictment with Chalk at a pretrial hearing. The record is clear concerning applicant's waiver: "THE COURT: Mr. Chalk, do you understand that I can only accept a new indictment, not the new charges, but the changed indictment, if you agree to do that. Do you understand?" Chalk responded, "Yes, your Honor." Again, the trial justice asked, "Do you agree to do that, sir?" Chalk again responded, "Yes, your Honor."

■ Second, applicant failed to meet his burden on the first *Strickland* prong. At the hearing, applicant's trial counsel explained his reasons for not objecting to the amended indictment. He stated his concern that forcing the state through "technical steps and procedures" would jeopardize his client's release on bail and complicate plea negotiations, all to "end up back in the same situation." He further testified that he discussed this decision with applicant at the time. We therefore conclude that applicant's trial counsel made a considered tactical decision not to object to the amended indictment. This tactical decision, even if ill-advised, was not "deficient performance," *Vorgvongsa*, 785 A.2d at 549, and as such did not "undermine[ ] the proper functioning of the adversarial process." *Young*, 877 A.2d at 629 (quoting *Bustamante*, 866 A.2d at 522).

In light of the foregoing, we conclude that trial counsel's decision not to object to

---

sure must be no broader than necessary[,] * * * the trial court must consider reasonable alternatives[,] * * * and it must make findings adequate to support the closure.") (quoting *Waller v. Georgia*, 467 U.S. 39, 47–48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)). Significantly, this Court's recent opinion in *State v. Barkmeyer* clearly states that a hearing justice should "[conduct] a hearing and [make] specific findings" before deciding to close the

courtroom during testimony. *State v. Barkmeyer*, 949 A.2d 984, 1003 (R.I.2008).

**2.** The applicant also argues that defense counsel should have raised a statute of limitations objection with respect to the first-degree sexual assault count. Such argument is completely without merit in light of our decision in *Brown v. State*, 841 A.2d 1116, 1121 (R.I. 2004) ("There has never been a statute-of-limitations for first-degree sexual assault.").

the amended indictment did not amount to ineffective assistance of counsel.

### 3

### Discovery

■■■ The applicant next contends that delayed discovery of records was the result of his counsel's failure to properly request a subpoena. Under the second *Strickland* prong, applicant bears the burden of demonstrating that prejudice actually resulted from defense counsel's failure to request a subpoena. *See Burke*, 925 A.2d at 893.

This Court had the opportunity to address this very issue in the due process context when we decided applicant's original appeal. "[L]ate disclosure in this case did not violate defendant's right to due process because it was not deliberate, and there was no reasonable probability that the jury verdict would have been different had the additional records from Harmony Hill been produced earlier." *Chalk*, 816 A.2d at 420. This Court concluded that prejudice did not result in this case from the late production of the Harmony Hill documents. *Id.*

In light of our earlier holding that applicant was not prejudiced by his defense counsel's failure to request a subpoena, we conclude that such failure did not constitute ineffective assistance of counsel.

### 4

### Communication with Defense Counsel

■■■ The applicant next argues that defense counsel's decision to limit communication with his client during applicant's cross-examination was a serious error resulting in prejudice. This contention is without merit.

The applicant has not provided this Court with a single argument on this issue to support the prejudice prong of *Strick-*

*land,* and no such prejudice is obvious from the record. *See Burke*, 925 A.2d at 893. The fact that applicant was instructed by his defense counsel not to communicate over a weekend "about the testimony that he was giving" does not, by itself, suggest any prejudice. The applicant bears the burden of demonstrating that any errors committed by trial counsel "were so serious as to deprive the defendant of a fair trial." *Id.* (quoting *Kholi*, 911 A.2d at 264). The applicant's suggestion that "a less scrupulous attorney * * * might seize the opportunity to sabotage a trial s/he believed was doomed to failure" is unavailing. The applicant does not suggest any sabotage in this trial, nor does he point to any other prejudice in this case as a result of his counsel's instruction. *See id.*

We therefore conclude that the applicant's argument concerning defense counsel's limitation on communication with his client is without merit.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court denying the application for postconviction relief. The record shall be remanded to the Superior Court.